[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 3, 2006
THOMAS K. KAHN
CLERK

No. 05-15045
Non-Argument Calendar

_____

BIA Nos. A95-537-597 & A95-537-598

TAVIP PRIYANTO,
DEWI CHOMALASARI,

                                                        Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 3, 2006)**

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Tavip Priyanto and Dewi Chomalasari petition this Court for review of the Board of Immigration Appeals' ("BIA's") order affirming the immigration judge's ("IJ's") denial of their claim for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 208.16(b). After review, we deny the petition.

## I. BACKGROUND

Priyanto and his wife, Dewi Chomalasari, citizens and natives of Indonesia, entered the United States on or about September 19, 1999 as visitors for pleasure with permission to stay for six months. They overstayed their visas several years. On April 24, 2002, Priyanto and his wife filed a joint application for asylum, withholding of removal under the INA, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT relief"), claiming that they feared persecution based on their status as ethnic Chinese and Catholic/Christian Indonesian citizens. On June 17, 2002, the government issued notices to appear, charging Priyanto and his wife with removability as aliens who had remained in the United States longer than permitted. See INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

In his application affidavit, Priyanto described the discrimination and harassment faced by Christians and Indonesians of Chinese origin in Indonesia. Priyanto claimed that he suffered "life-threatening persecutions" due to his Chinese

Christian background.  In addition to describing how native Indonesian Muslim children poorly treated him as a child, Priyanto testified about two incidents.  First, in early July 1998, at about 7:30 p.m., Priyanto was kidnapped at knifepoint by a man in a supermarket parking lot.  The man called Priyanto a "Chinese dog" and forced him into a car.  The kidnappers told Priyanto, "We are not robbing you, we are simply taking back what you dogs had stolen from us all these time!"  Priyanto was blindfolded and taken to a building with a small, windowless room, where he was called an infidel, robbed, beaten, urinated on, doused with water, forced to reveal his credit and bank card numbers, and held overnight without food or water while the kidnappers withdrew money from his accounts.  On the second day, Chinese men working nearby freed him.  When Priyanto went to the police station, the police asked him for money before he could even report the crimes, so Priyanto "just turned [his] back and went home."

The second incident was over a year later on August 27, 1999, when Priyanto drove a friend, Bambang, home from religious services.  Two native Indonesians on a motorcycle pulled alongside Priyanto's car, stared at the cross hanging on his mirror and smashed his windshield with a baseball bat.  Priyanto and Bambang got out of the car.  One man yelled, "What are you infidel bastards showing off your religion here, this is our Moslem country you know?  Go back to where you pigs come from!"  As Priyanto and Bambang walked back to the car,

3

the two men attacked them with baseball bats.  Priyanto awoke in the hospital and was told that Bambang had died.  Priyanto decided to flee Indonesia.

Attached to Priyanto's asylum application were copies of, inter alia, petitioners' birth and marriage certificates; their passports, which, on October 19, 1999, were stamped by the Indonesian Embassy in New York; the 2000 and 2001 State Department Country Reports on Human Rights Practices in Indonesia; a June 27, 2001 travel warning by the American Embassy in Indonesia, advising Americans to defer nonessential travel to Indonesia due to the violence, political unrest, and anti-American protests; and numerous news articles and editorials about political crisis, religious tensions between Christians and Muslims, and the targeting of ethnic Chinese.

At the hearing, Priyanto testified about the July 1998 kidnapping incident.  On cross-examination, however, Priyanto first indicated that the incident occurred in July 1988, then stated that it occurred in July 1998.  Priyanto also testified that when he tried to report the crimes, the police told him that they did not care about his situation because he was Chinese.  He did not file a police report, Priyanto testified, because the police would not let him, a Chinese person, file a report.  In his asylum application, Priyanto had stated that the police asked him for money before he could report the crime, so he left.

4

Priyanto also testified about the August 27, 1999 beating incident. Priyanto testified that the incident was reported to authorities, but the authorities did not respond. When asked why he did not have his hospital records, Priyanto responded that his siblings had sent him medical records and his friend's death certificate, but "they got lost on the way. I tried to get a copy of it and unable to do it." Priyanto stated that he could not get copies because his family had since moved to another part of Indonesia.

As to his employment history, Priyanto testified that he helped his grandmother run a bar/restaurant between 1988 and 1993, and worked at the Bali Cliff Resort from 1993 until 1999. Although promoted at the resort, Priyanto did not feel he was promoted to a high enough position.

As to his religious practices in Indonesia, Priyanto testified that he went to a Catholic church in Indonesia called Santa Maria. Priyanto stated that the priest at his church was called "Pastor Haryono" and that the head of the church was a Cardinal posted to a different church. Priyanto attended church once per week on Sunday, was baptized as a child, and received communion around age 13. When asked the significance of the rosary, he answered, "The rosary helped to protect me to be close to Jesus Christ." Priyanto said that he used his rosary for the "Our Father in Heaven prayer." Priyanto then recited part of the prayer. Priyanto was familiar with the religious holidays of Easter and Christmas.

The IJ asked Priyanto why he and his wife had their passports stamped in 1999 by the Indonesian Embassy in New York, as required by the Indonesian government, if Priyanto was fleeing Indonesia for fear of persecution. Priyanto answered, "I did that so I will not become a law breaker in Indonesia. So whenever I need help they will be able to help me later."

In an oral decision, the IJ denied asylum, withholding of removal and CAT relief. The IJ found the petitioners ineligible for asylum because their application was not filed within one year of their arrival in the United States and they had failed to show either changed circumstances or extraordinary circumstances that would excuse the untimeliness. See 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D); 8 C.F.R. § 208.4(a)(4), (5). The IJ also found that petitioners had not suffered past persecution and did not have a well-founded fear of persecution. The IJ expressly found Priyanto not credible, stating, "The Court does not find the lead respondent credible." The IJ found "substantial and material inconsistencies" and other deficiencies including: (1) Priyanto was unsure whether the kidnapping incident occurred in 1998 or 1988; (2) Priyanto did not give a reasonable explanation as to why his asylum application stated that he did not file a report about the kidnapping incident because the police requested money from him and did not state, as he testified, that he had tried to file a report with police, but was refused because he was Chinese; (3) as to the August 27, 1999 incident that

6

resulted in Priyanto's hospitalization and his friend's death, Priyanto did not

provide a reasonable explanation for his failure to produce any documentary

evidence – in the form of medical records, police reports, or a death certificate –

other than a statement that the documents were lost in transit and Priyanto was

unable to obtain copies; (4) Priyanto initially had trouble recalling the name of his

church in Indonesia, referred to his priest as "Pastor," instead of "Father" or

"Reverend," and was unable to provide the name of the Cardinal for his Parish; (5)

although Priyanto recited certain portions of the "Lord's Prayer," he did not state

the name of the prayer, could not provide coherent testimony regarding the

significance of the rosary, and could not provide information about particular

Catholic holidays except the commonly known holidays of Easter and Christmas;

(6) Priyanto and his wife had not provided any documentation showing they were,

in fact, Catholic; (7) petitioners had a "substantial delay" in filing their asylum

application, waiting from their entry in September 1999 until April 2002; and (8)

petitioners registered with the Indonesian Embassy in October 1999, which

suggested that they did not flee Indonesia in September 1999 fearing persecution.

Petitioners appealed to the BIA, challenging only the denial of their

withholding of removal claim. The BIA affirmed the IJ's decision, agreeing that

the petitioners' asylum application was untimely and that Priyanto had not shown

he was entitled to withholding of removal or CAT relief.  Priyanto filed this petition.[1]

## II.  DISCUSSION

### A. Withholding of Removal

An alien is entitled to withholding of removal if he can show that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  An alien bears the burden to show a clear probability, i.e., more-likely-than-not, that he would be persecuted or tortured upon his return to the country in question.  INS v. Cardoza-Fonseca, 480 U.S. 421, 430, 107 S. Ct. 1207, 1212 (1987); INS v. Stevic, 467 U.S. 407, 421-30, 104 S. Ct. 2489, 2496-2501 (1984); Mendoza, 327 F.3d at 1287.  The alien can meet his burden by showing either: (1) "past persecution in his country based on a protected ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in his country."  Mendoza, 327 F.3d at 1287.

### B.    Credibility Findings

---

[1]On appeal, Priyanto does not challenge the IJ's denial of his asylum application and request for CAT relief.  See Mendoza, 327 F.3d at 1286 n.3.  Thus, we review only his withholding of removal claim.

"The testimony of an applicant, if found to be credible, is alone sufficient to establish" eligibility for withholding of removal.  See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (citing, inter alia, 8 C.F.R. § 208.16(b)). "Conversely, an adverse credibility determination alone may be sufficient to support the denial" of withholding of removal.  Id.  Nevertheless, the IJ must consider all evidence submitted by the applicant, including documentation.  Id. The IJ must provide "specific, cogent reasons" for her credibility finding.  Id. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence."  Id.[2]

## B.    IJ's Adverse Credibility Finding

On appeal, Priyanto challenges only the IJ's adverse credibility finding. After review, we conclude that the IJ's credibility determination is supported by substantial evidence.[3]  For example, as discussed earlier, the IJ detailed

    [2]The REAL ID Act of 2005 amended the INA regarding the burden of proof, credibility determinations and corroborating evidence.  See Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303, 304-05 (codified at 8 U.S.C. §§ 1158(b)(3)(B)(iii), 1229a(c)(4)(C)).  The Act states that these particular provisions "shall apply to applications for asylum, withholding, or other relief from removal made on or after" the enactment date of May 11, 2005.  Id. § 101(h)(2), 119 Stat. at 305.  Thus, we reject the government's claim that these provisions apply to this appeal.

    [3]The BIA expressly adopted the IJ's reasoning and briefly articulated its reasons for doing so.  Thus, we review the decisions of both the IJ and the BIA.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  In doing so, we review legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).  We review factual determinations, including credibility determinations, under the substantial evidence test.  Id. at

inconsistencies, which, importantly, related directly to the two events giving rise to Priyanto's claimed fear of persecution. The IJ also gave specific cogent reasons for her credibility findings.

Priyanto argues that some of his evidentiary deficiencies can be attributed to nervousness, language barriers and translation errors. Priyanto did not raise any concerns about translation or communication difficulties during the hearing. Furthermore, a review of the record as a whole indicates that Priyanto generally had no trouble understanding or communicating during the hearing. The record does not compel the conclusion that the inconsistencies and inadequacies in Priyanto's testimony were due to miscommunication.

Priyanto does not contend that the articles and Country Reports, alone, provided substantial evidentiary basis for withholding of removal. Therefore, we cannot say that the record as a whole compels reversal.

**PETITION DENIED.**

---

817-18. Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, __ U.S. __, 125 S. Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . .").